UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **ELISABETH GORGOGLIONE** ) | |
| ) | |
| Plaintiff, ) | Civil Action No. |
| ) | 3:17-cv-01248-AWT |
| v. ) | |
| ) | |
| **TD BANK N.A.**, ) | SEPTEMBER 12, 2017 |
| ) | |
| Defendant. ) | |

## AMENDED COMPLAINT

**Introduction:**

1. This action is brought pursuant to the Connecticut Fair Employment Practices Act, Connecticut General Statutes § 46-60 *et seq.* (hereinafter the "CFEPA"), Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA").

2. Plaintiff has complied with the procedural prerequisites provided for in the CFEPA, Title VII and the ADA for filing this action, having timely filed a complaint with the Connecticut Commission on Human Rights and Opportunities (CHRO No. 1710127) and having obtained a Release of Jurisdiction, which was issued on April 27, 2017.

3. In accordance with Connecticut General Statutes § 46a-103, Plaintiff has served a copy of this action on the Commission on Human Rights and Opportunities.

4. At all times relevant hereto, Plaintiff ELISABETH E. GORGOGLIONE was (and is) an individual residing in Marlborough, Connecticut.

5. At all times relevant hereto, Defendant TD BANK, N.A. was (and is) a company with a principal office located at 2035 Limestone Road, Wilmington, Delaware.

6. At all times relevant hereto, Defendant was a national bank doing business in the United States of America through local branch offices located throughout the Northeast (including Connecticut), the Mid-Atlantic, Metro D.C., the Carolinas and Florida.

7. At all times relevant hereto, Defendant's business operations involved, *inter alia*, providing financial and banking products and services.

8. At all times relevant hereto, Plaintiff was an "employee" within the meaning of the CFEPA.

9. At all times relevant hereto, Plaintiff was (and is) a female.

10. At all times relevant hereto, Defendant employed three (3) or more employees and was an "employer" within the meaning of the CFEPA.

11. Plaintiff was employed by Defendant at its Hartford, Connecticut office from March 7, 2011 to April 12, 2016.

12. Initially, Plaintiff was hired by Defendant for, and held the position of, Commercial Portfolio Loan Officer IV.

13. On or about June 11, 2012, Plaintiff was promoted to the position of CSB Senior Portfolio Specialist, which position was subsequently reclassified by Defendant as CSB Market Credit Manager II on or about August 1, 2015.

14. Plaintiff's CBS Market Credit Manager II position entailed managing the credit underwriting and credit administration functions within specialty banking, including establishing the credit structure, borrower risk ratings and facility risk ratings for new and existing credit relationships.

15. Plaintiff's CBS Market Credit Manager II also involved leading and overseeing a team of lower level credit managers and credit analysts employed by Defendant.

16. At all times relevant hereto, Plaintiff's job performance met and/or exceeded the standards for her position.

17. Prior to June 2014, Plaintiff's supervisors treated her fairly and in an unbiased manner without any obvious, indirect or subtle regard for her sex; she had a good working relationship with her supervisors, her job performance reviews were positive, she thrived in her position, the performance of the group of employees she managed improved consistently year over year, and she received numerous formal and informal commendations from supervisors and other senior/executive management personnel.

18. On or about June 2014, Defendant assigned Debra Johnston, Senior Vice President, Regional Head of Credit Management for Commercial Real Estate (who was based in Defendant's Boston, Massachusetts office) to act as Plaintiff's mentor.

19. Based on information and belief, Defendant assigned Ms. Johnston to act as Plaintiff's mentor, in part, because Defendant believed Ms. Johnston could assist Plaintiff with her "professional demeanor."

20. On or about June 28, 2015, Defendant formally reassigned Plaintiff such that she was now to report directly to Ms. Johnston as her immediate supervisor.

21. On numerous occasions, Ms. Johnston expressed to Plaintiff that Plaintiff, as a female professional, was "held to a higher standard" than Plaintiff's male counterparts employed by Defendant.

22. On one occasion, as Plaintiff was preparing to travel out of state for a conference with other members of Defendant's commercial real estate management group, Ms. Johnston made the following statements to Plaintiff: "make sure you show how professional you are because being females, we are held to a higher standard and judged differently [than males], whether we like it or not . . .," and that "men are allowed to get away with much more and their conduct is not viewed like that of females."

23. Throughout the period that Ms. Johnston was Plaintiff's supervisor she was unreasonably critical of Plaintiff's performance and dismissive of Plaintiff's input, which was in contrast to how Ms. Johnston treated or otherwise dealt with other employees she supervised who were male.

24. Ms. Johnston deferred to other employees she supervised who were male for a multitude of matters and often excluded Plaintiff from substantive discussions pertaining to the overall team.

25. Ms. Johnston directed special projects and assignments to other employees she supervised who were male to the exclusion of Plaintiff.

26. Ms. Johnston often refused to recognize Plaintiff's work efforts, contributions and performance, despite the fact that she would often do so when it involved other employees she supervised who were male.

27. Throughout the period that Plaintiff reported to Ms. Johnston, based on information and belief, Plaintiff was singled out and criticized by Ms. Johnston due to her sex and because Ms. Johnston viewed Plaintiff as being too outspoken, forceful and opinionated for a female employee, while at the same time recognizing these as positive attributes for male employees.

28. Plaintiff reported Ms. Johnston's disparate treatment toward her to Peter Brockelman, Defendant's Commercial Real Estate Regional Director who served as Ms. Johnston's supervisor (who, like Ms. Johnston, was based in Defendant's Boston, Massachusetts office), and Mr. Brockelman responded that "[he] was not surprised, and that other [female] employees had left [Defendant's employ] because of Ms. Johnston, but that [Plaintiff] would have to get used to it because [Ms. Johnston] wasn't going anywhere."

29. Plaintiff also reported Ms. Johnston's disparate treatment toward her to Defendant's Human Resources Department.

30. Based on information and belief, Defendant took no action in relation to Plaintiff's complaints regarding Ms. Johnston's treatment of Plaintiff.

31. Due, in part, to Ms. Johnston's disparate treatment, Plaintiff requested a transfer to a different position, Relationship Manger, which would have resulted in her being assigned to a different supervisor, despite the fact that the requested position would have been a grade level demotion.

32. Although Defendant initially approved Plaintiff's request and implemented the transfer of Plaintiff to the Relationship Manager position on December 1, 2016, on December 17, 2016 Defendant "temporarily" reassigned Plaintiff back to her previous CBS Market Credit Manager II position.

33. On numerous occasions, Mr. Brockelman made comments to Plaintiff which implied that she should conduct herself differently because she was a female, such as that Plaintiff "should not always be so intense," and he often referred to Plaintiff as being "fiery;" based on information and belief, Mr. Brockelman did not direct these types of references toward male employees.

34. Based on information and belief, Mr. Brockelman took an interest in the career development of certain male employees, but he did not exhibit the same level of interest toward Plaintiff's career development as a female employee.

35. On one occasion, Plaintiff attended a business function in Boston which was also attended by Mr. Brockelman; while socializing with Plaintiff during this function, Mr. Brockelman made statements to Plaintiff reasonably characterized as sexual innuendo, which Plaintiff found offensive and which Plaintiff rebuffed.

36. On or about August 2015, Plaintiff sustained an injury to her ankle involving a peroneal tendon tear and was subsequently advised that she would need to undergo surgical procedure.

37. Plaintiff's ankle condition was and continues to be a chronic physical infirmity and/or impairment.

38. Due to the fall season being an extremely busy period for the performance of her job responsibilities, Plaintiff planned to forego the surgical procedure until after the 2015-2016 New Year.

39. Plaintiff underwent the aforesaid surgical procedure on January 14, 2016.

40. Plaintiff was restricted from traveling to and from work for a period of approximately twelve (12) weeks.

41. Plaintiff requested that Defendant accommodate her disability and associated medical leave by permitting her to work from home as she was able to perform the essential functions of her job working remotely.

42. Defendant directly or indirectly denied and/or impeded Plaintiff's request to work from home.

43. Based on information and belief, Defendant has a flexible policy regarding employees working from home and permitted other employees with similar medical issues to so do.

44. Based on information and belief, during Plaintiff's medical leave, Mr. Brockelman commented to another employee of Defendant that "if [he] had known [Plaintiff] was going to be out for three months, then we would have hired someone else [for the Relationship Manager position] instead."

45. On April 11, 2016, Plaintiff returned to work after her medical leave.

46. On April 11, 2016, Plaintiff's first day back to work after her medical leave, Plaintiff received a written warning for alleged improper use of her corporate credit card; Plaintiff had inadvertently charged personal expenses to her corporate credit card instead of her personal credit card (which, like her corporate credit card, was also issued by TD Bank).

47. The credit card charges at issue stemmed from charges as far back as September 2015 and Plaintiff had repaid the charges in full with her personal funds when the credit card statements were received and prior to Defendant ever raising an issue related to the charges.

48. After receiving the written warning on April 11, 2016, Plaintiff was directed to leave the office and go home, essentially being put on administrative leave.

49. On April 11, 2016, Plaintiff spoke to Defendant's Human Resources Department to follow up on the prior complaint Plaintiff had made against Ms. Johnston.

50. On April 12, 2016, which would have been Plaintiff's second day back to work after her medical leave, Plaintiff (while still out of the office due to being placed on

7

administrative leave the previous day) participated in a conference call with Defendant's Human Resources Department, Ms. Johnston and Mr. Brockelman.

51. During the conference call, Mr. Brockelman informed Plaintiff that her employment with Defendant was being terminated.

52. Mr. Brockelman's proffered reason for Defendant's termination of Plaintiff's employment was that she had been insubordinate in approving a $125 expense a lower level employee had incurred for professional (head shot-type) photographs to be used for marketing purposes.

53. The $125 expense at issue was approved by Plaintiff in October 2015; Plaintiff approved this expense for a single employee despite Ms. Johnston previously having denied a larger expense request (approximately $600) made by Plaintiff for multiple employees to have professional photographs taken.

54. Although the larger expense for the professional photographs had been denied by Ms. Johnston, Plaintiff reasonably believed it was within her authority to nonetheless approve the smaller expense for the single employee.

55. Based on information and belief, the employee expense approval issue was first reported to Defendant's Human Resources Department by Ms. Johnston while Plaintiff was out on medical leave.

56. Prior to the termination of Plaintiff's employment, Ms. Johnston never raised the employee expense approval issue directly with Plaintiff or otherwise requested an explanation from Plaintiff regarding the circumstances.

57. Based on information and belief, Defendant conducted the bulk of its investigation into both the credit card issue and the employee expense issue while Plaintiff was on medical leave.

58. Based on information and belief, Defendant's purported justification for the termination of Plaintiff's employment was a pretext and that Plaintiff's sex (female) and/or her disability was a motivating or substantial factor in the adverse employment action taken against Plaintiff.

**First Count:**        **(Sex Discrimination - CFEPA)**

1-58. Paragraphs 1 through 58 of the Introduction are hereby incorporated by reference as Paragraphs 1 through 58 of this First Count as if more fully set forth herein.

59. The actions of Defendant as alleged herein violate the provisions of the CFEPA in one or more of the following ways, in that:

    a. Plaintiff's sex (female) was a motivating or substantial factor in Defendant's decision to terminate Plaintiff's employment;

    b. Plaintiff's sex (female) was a motivating or substantial factor in Defendant's disparate treatment of Plaintiff in relation to the terms, conditions and/or privileges of her employment in comparison to similarly situated male employees;

    c. Defendant terminated Plaintiff or otherwise discriminated against Plaintiff in relation to the terms, conditions and/or privileges of her employment due to her sex (female); and/or

60. Plaintiff has suffered damages as a proximate cause of the aforesaid actions of Defendant, including, but not limited to, lost wages/earnings (back pay and front pay) and emotional distress and mental anguish.

**Second Count:** **(Physical Disability Discrimination - CFEPA)**

1-58. Paragraphs 1 through 58 of the Introduction are hereby incorporated by reference as Paragraphs 1 through 58 of this Second Count as if more fully set forth herein.

59. The actions of Defendant as alleged herein violate the provisions of the CFEPA in one or more of the following ways, in that:

    a. Defendant failed to reasonably accommodate Plaintiff's physical disability; and/or

    b. Defendant terminated Plaintiff or otherwise discriminated against Plaintiff in relation to the terms, conditions and/or privileges of her employment due to her physical disability or because she was perceived as having a physical disability.

60. Plaintiff has suffered damages as a proximate cause of the aforesaid actions of Defendant, including, but not limited to, lost wages/earnings (back pay and front pay) and emotional distress damages.

**Third Count:** **(Retaliatory Discrimination - CFEPA)**

1-58. Paragraphs 1 through 58 of the Introduction are hereby incorporated by reference as Paragraphs 1 through 58 of this Third Count as if more fully set forth herein.

59. The actions of Defendant as alleged herein violated the provisions of the CFEPA in that Defendant terminated Plaintiff and/or otherwise discriminated against her because she opposed Defendant's discriminatory employment practices.

60. Plaintiff has suffered damages as a proximate cause of the aforesaid actions of Defendant, including, but not limited to, lost wages/earnings (back pay and front pay) and emotional distress damages.

**Fourth Count:**     **(Sex Discrimination - Title VII)**

1-58. Paragraphs 1 through 58 of the Introduction are hereby incorporated by reference as Paragraphs 1 through 58 of this Fourth Count as if more fully set forth herein.

59. The actions of Defendant as alleged herein violate the provisions of Title VII in one or more of the following ways, in that:

    a. Plaintiff's sex (female) was a motivating or substantial factor in Defendant's decision to terminate Plaintiff's employment;

    b. Plaintiff's sex (female) was a motivating or substantial factor in Defendant's disparate treatment of Plaintiff in relation to the terms, conditions and/or privileges of her employment in comparison to similarly situated male employees;

    c. Defendant terminated Plaintiff or otherwise discriminated against Plaintiff in relation to the terms, conditions and/or privileges of her employment due to her sex (female); and/or

60. Plaintiff has suffered damages as a proximate cause of the aforesaid actions of Defendant, including, but not limited to, lost wages/earnings (back pay and front pay) and emotional distress and mental anguish.

**Fifth Count:  (Physical Disability Discrimination - ADA)**

1-58. Paragraphs 1 through 58 of the Introduction are hereby incorporated by reference as Paragraphs 1 through 58 of this Fifth Count as if more fully set forth herein.

59. The actions of Defendant as alleged herein violate the provisions of the ADA in one or more of the following ways, in that:

    a. Defendant failed to reasonably accommodate Plaintiff's physical disability; and/or

    b.  Defendant terminated Plaintiff or otherwise discriminated against Plaintiff in relation to the terms, conditions and/or privileges of her employment due to her physical disability or because she was perceived as having a physical disability.

  60.  Plaintiff has suffered damages as a proximate cause of the aforesaid actions of Defendant, including, but not limited to, lost wages/earnings (back pay and front pay) and emotional distress damages.

**<u>Sixth Count</u>:**  **(Retaliatory Discrimination - Title VII and ADA)**

  1-58.  Paragraphs 1 through 58 of the Introduction are hereby incorporated by reference as Paragraphs 1 through 58 of this Sixth Count as if more fully set forth herein.

  59.  The actions of Defendant as alleged herein violated the provisions of Title VII and the ADA in that Defendant terminated Plaintiff and/or otherwise discriminated against her because she opposed Defendant's discriminatory employment practices.

  60.  Plaintiff has suffered damages as a proximate cause of the aforesaid actions of Defendant, including, but not limited to, lost wages/earnings (back pay and front pay) and emotional distress damages.

The undersigned certifies that he has personal knowledge of the financial responsibility of Plaintiff and deems it sufficient to pay the costs of this action.

>PLAINTIFF, ELISABETH E. GORGOGLIONE
>
>/s/ John B. Swanson
>John B. Swanson
>Federal Bar No.: ct25780
>Swanson Law, LLC
>9 Austin Drive, Suite 202
>Marlborough, CT 06447
>Phone:  860-365-5354
>Fax:  860-467-6003
>Email: jwanson@swansonlawllc.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **ELISABETH GORGOGLIONE** ) | |
| ) | |
| Plaintiff, ) | Civil Action No. |
| ) | 3:17-cv-01248-AWT |
| v. ) | |
| ) | |
| **TD BANK N.A.,** ) | SEPTEMBER 12, 2017 |
| ) | |
| Defendant. ) | |

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff claims:

1. Compensatory damages for back pay, front pay and emotional distress and mental anguish;

2. Punitive damages pursuant to 42 U.S.C. § 1981a;

3. Attorney's fees and costs pursuant to Connecticut General Statutes § 46a-104, 41 U.S.C. §1981a, the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, and any other applicable statute, regulation and/or authority;

4. Interest and costs; and

5. Such other and further relief as in law or equity would pertain.

The amount in demand, exclusive of interest and costs, is Fifteen Thousand ($15,000) Dollars or more.

PLAINTIFF, ELISABETH E. GORGOGLIONE

/s/ John B. Swanson
John B. Swanson
Federal Bar No.: ct25780
Swanson Law, LLC
9 Austin Drive, Suite 202
Marlborough, CT 06447
Phone:  860-365-5354
Fax:  860-467-6003
Email: jwanson@swansonlawllc.com

## **CERTIFICATION OF SERVICE**

I hereby certify that on September 12, 2017, a copy of foregoing Amended Complaint was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ John B. Swanson
John B. Swanson
Federal Bar No.: ct25780